OPINION
BERNICE BOUIE DONALD, Circuit Judge.
The instant appeal involving KNC Investments, LLC (“KNC”) and Lane’s End Stallions, Inc. (“Lane’s End”) arose following this Court’s remand to the district court to determine whether subsequent events mooted the issues KNC raised in its prior appeal. See KNC Invs., LLC v. Lane’s End Stallions, Inc., 504 Fed.Appx. 467, 467-68 (6th Cir.2012). On remand, the district court found that no live case or controversy remained and accordingly granted Lane’s End’s motion to dismiss the case for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, we AFFIRM the judgment of the district court.
I.
Lane’s End serves as Syndicate Manager for the owners of interests in the Lem *486 on Drop Kid Syndicate (“the Syndicate”). Lemon Drop Kid is a Thoroughbred horse. The agreement establishing the Syndicate transferred ownership of Lemon Drop Kid from the original, single owner into syndicate form to provide for the horse’s management and supervision. The Syndicate consists of forty equal fractional ownership interests (“Fractional Interests”). A holder of a Fractional Interest is an Owner. Each Owner has various rights under the agreement, including breeding rights.
On February 28, 2011, KNC purchased Fractional Interest No. A05 in the Syndicate from its previous Owner. At the time of this purchase, the Original Syndicate Agreement (“Original Agreement”), effective November 30, 2000, governed the rights and responsibilities of the Owners and the Syndicate Manager. The Original Agreement contained language providing that it could be “altered, amended or modified with the affirmative vote of the Owners holding 34 of the 40 Fractional Interests.”
In early March of 2011, KNC began making demands of Lane’s End regarding the other Owners of Fractional Interests in the Syndicate. Specifically, KNC desired to obtain the names and contact information of the other Owners. On March 8, 2011, Lane’s End responded to KNC’s requests. Lane’s End indicated that it would seek permission from the other Owners in the Syndicate to disclose their identities and contact information pursuant to section 6.1 of the Original Agreement, which provided that a majority vote of the Owners of the Fractional Interests would decide any question submitted. All the other Owners except KNC voted against disclosing their identities and contact information, and Lane’s End refused to provide such information to KNC.
After the other Owners rebuffed KNC’s requests for information, on March 22, 2011, KNC filed suit against Lane’s End, as Syndicate Manager, in the United States District Court for the Eastern District of Kentucky, asserting four claims for relief and seeking declaratory relief, damages, and complete accounting of the Syndicate’s financial records. In November of 2011, the district court granted both Lane’s End’s motion to dismiss some of KNC’s claims and Lane’s End’s motion for summary judgment as to KNC’s other claims. Following the district court’s denial of KNC’s motion to reconsider its November 2011 decision, KNC appealed.
Before this Court adjudicated KNC’s prior appeal, the other thirty-nine Owners of Fractional Interests in the Syndicate voted to amend the Original Agreement and expressly to ratify Lane’s End’s past actions as Syndicate Manager. Lane’s End then filed a motion to dismiss KNC’s appeal as moot based on the Amended Syndicate Agreement (“Amended Agreement”). KNC Invs., 504 Fed.Appx. at 467. This Court remanded to the district court to determine in the first instance whether the Amended Agreement mooted KNC’s claims. Id. at 468. On remand, the district court found that no live case or controversy remained and accordingly granted Lane’s End’s Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. KNC again appealed to this Court.
II.
A.
In granting Lane’s End’s motion to dismiss for lack of subject-matter jurisdiction, the district court decided only the question of whether KNC’s claims are now moot in light of the Amended Agreement. Because the district court considered only the issue of mootness on remand, we confine our review to that issue. Wright v. Holbrook, 794 F.2d 1152, 1157 (6th Cir. *487 1986) (“[T]he general rule is that this court will not consider issues not raised in the district court.”); see also Norfolk & W. Ry. Co. v. City of Oregon, 210 F.3d 372, 2000 WL 377064, at *4 (6th Cir.2000) (Table) (“The district court limited its remand to that issue and, likewise, our review is similarly limited.” (footnote omitted)).
We generally review de novo a district court’s decision to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). Howard v. Whitbeck, 382 F.3d 633, 636 (6th Cir.2004). If the lower court, however, “does not merely analyze the complaint on its face, but instead inquires into the factual predicates for jurisdiction, the decision on the Rule 12(b)(1) motion resolves a ‘factual’ challenge rather than a ‘facial’ challenge, and we review the district court’s factual findings for clear error.” Id. (citing RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1133-35 (6th Cir.1996); United States v. Ritchie, 15 F.3d 592, 598 (6th Cir.1994); Ohio Nat’l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990)).
Lane’s End’s challenge to the existence of subject-matter jurisdiction in this case is a factual one because the district court analyzed the complaint in light of the Amended Agreement, which Lane’s End contends deprives the court of a “factual predicate[ ]” for jurisdiction. Id. Language from this Court’s prior order buttresses our conclusion: “Perhaps this case is moot, or perhaps the new facts relate to the merits of the dispute between KNC and Lane’s End. Either way, ... the district court is best suited to find any relevant facts and to determine in the first instance whether a live controversy remains.” KNC Invs., 504 Fed.Appx. at 468. We therefore review the district court’s factual findings for clear error and its legal conclusions de novo. See Howard, 382 F.3d at 636.
B.
This Court has stated that “ ‘[t]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interest of the parties.’ ” Wedgewood Ltd. P’ship I v. Twp. of Liberty, 610 F.3d 340, 348 (6th Cir.2010) (quoting Ford v. Wilder, 469 F.3d 500, 504 (6th Cir.2006)). The “heavy burden of demonstrating mootness” lies with the party claiming that the case is moot. Cleveland Branch, NAACP v. City of Parma, 263 F.3d 513, 530-31 (6th Cir.2001) (citing Cnty. of L.A. v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). We agree with the district court that Lane’s End met its burden to prove the mootness of this controversy in light of the Amended Agreement, which now expressly ratifies Lane’s End’s past conduct.
KNC’s Amended Complaint asserts four claims against Lane’s End. Count I seeks a declaratory judgment regarding KNC’s alleged rights to inspect the Syndicate’s books and records, to an un-redacted purchase offer, and to information regarding the advancement of Syndicate funds based on the Original Agreement. Count II seeks a declaratory judgment regarding KNC’s alleged right to inspect the Syndicate’s books and records based on the Kentucky Business Corporations Act, Ky. Rev.Stat. Ann. § 271b.l6-020. Count III seeks compensatory and punitive damages for Lane’s End’s alleged violations of its fiduciary duties to the Owners of the Syndicate based on the Original Agreement. Count IV seeks a full and complete accounting of all Syndicate funds based on Kentucky’s law of agency and the Original Agreement. In the prior appeal, this Court affirmed the district court’s dismissal of Count II. KNC Invs., 504 Fed.Appx. at 468 (‘We thus need no additional facts to conclude that the district court correctly *488 rejected KNC’s claims under the Business Corporations Act.”). The only claims remaining on remand, then, were those KNC asserted based on the Original Agreement.
Events that transpired after KNC filed its Amended Complaint, however, prevent it from asserting any claims under the Original Agreement. The other thirty-nine Owners of Fractional Interests in the Syndicate — all save for KNC — voted in May and June of 2012 to amend the Original Agreement. The Amended Agreement addresses the actions taken by Lane’s End that KNC complains of in this litigation. Specifically, the language of the Amended Agreement confirms that the identities of individual Owners are confidential and Lane’s End cannot disclose them absent a majority vote. The language of the Amended Agreement also expressly ratifies the actions taken by Lane’s End that KNC alleges violated its rights under the Original Agreement. Kentucky law permits such ratification, even with the consent of a simple majority of the owners. See Weisbord/Etkin/Goldberg v. Gainesway Mgmt. Corp., No.2007-CA-000280MR, 2008 WL 820950, at *5-6 (Ky.Ct.App. Mar. 28, 2008) (“The appellants provide no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate.”).[1]
Accordingly, the district court’s factual conclusion — based on the affidavit submitted by Thomas Hyams, Secretary and Treasurer of Lane’s End — that the other thirty-nine Owners in the Syndicate followed the proper procedures for ratifying Lane’s End’s prior actions is not clearly erroneous. KNC failed to present probative evidence to the district court rebutting Hyams’ affidavit, and the Amended Agreement specifically ratifies all of Lane’s End’s past actions. This Court thus cannot grant any relief that “would ... make a difference to the legal interest of the parties.” Wedgewood, 610 F.3d at 348 (quoting Ford, 469 F.3d at 504).
C.
KNC nonetheless contends that the district court committed two legal errors in granting Lane’s End’s Rule 12(b)(1) motion to dismiss. First, KNC argues that the district court erred by denying its request for discovery on remand because KNC “should have been given an opportunity to investigate how the amendments occurred and whether Lane’s End went beyond its role as Syndicate Manager in seeking and obtaining the amendments.” Appellant Br. at 38. Second, KNC argues: “Lane’s End could not effectuate an amendment to the Original Syndicate Agreement without the consent of one of its parties (KNC), especially when its attempt to do so was intended to void certain provisions of that contract that existed when KNC agreed to become a party to it.” Id. at 42.
The district court properly rejected KNC’s request for discovery. In Chrysler Corp. v. Fedders Corp., 643 F.2d 1229 (6th Cir.1981), this Court held that whether or not to allow discovery prior to deciding a motion to dismiss for lack of jurisdiction is within the discretion of the district court. Id. at 1240 (“A ruling by the trial court limiting or denying discovery will not be *489 cause for reversal unless an abuse of discretion is shown.”). The instant case is analogous to Chrysler Corp. because KNC did not present any probative evidence to the district court to support its allegations that Lane’s End acted improperly during the amendment process in May and June of 2012. See id. (“Inasmuch as Chrysler failed to offer any factual basis for its allegations of conspiracy, it was well within the trial court’s discretion to deny Chrysler’s request for discovery.”). The district court therefore did not abuse its discretion in denying KNC’s discovery request.
KNC’s second' argument, that the other Owners of the Syndicate could not amend the Original Agreement without KNC’s consent, lacks merit. In Kentucky Home Mutual Life Insurance Co. v. Leitner, 302 Ky. 789, 196 S.W.2d 421 (1946), Kentucky’s highest court held the opposite. Where a contract contains a provision for amendment, even if that provision allows for unilateral modification by only one party, there is no blanket requirement under Kentucky law that all parties must consent to an amendment before it binds them. See id. at 423 (“It is stipulated that the insured was bound by the original reinsurance agreement. Since it provided for amendments thereto, he was likewise bound by the amendments, unless the Company was estopped or unless a consideration separate and distinct from the original consideration is required to support the amendment.”). KNC’s assent to the amendment provision in the Original Agreement thus precludes it from challenging the validity of subsequent amendments enacted pursuant to that provision, absent certain exceptions not present in this case. See id. (requiring the objecting party to “accept the contract as it was made”).[2] Because Kentucky law does not prohibit the other thirty-nine Owners of Fractional Interests in the Syndicate from ratifying Lane’s End’s conduct without KNC’s consent, the district court did not err when it granted Lane’s End’s motion to dismiss for lack of subject-matter jurisdiction.
III.
Accordingly, we AFFIRM the judgment of the district court.

. We recognize that the Weisbord court reached this conclusion in a case where the syndicate agreement was not amended, which is different from the situation here. We cite this case only to demonstrate that the other Owners of Fractional Interests in the Syndicate were permitted under Kentucky law to ratify Lane’s End’s past conduct without KNC’s consent.

. Because we conclude that the other thirty-nine Owners of Fractional Interests in the Syndicate properly ratified Lane’s End’s conduct, we do not address whether the Owners properly could amend the agreement retroactively.